UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      **Plaintiff,**

      v.                                                    Case No. 24-CR-203

**NEE GEE J. CLOUD,**

      **Defendant.**

---

### ORDER DENYING DEFENDANT'S RULE 29 MOTION
### FOR JUDGMENT OF ACQUITTAL

---

On October 22, 2024, a grand jury sitting in Milwaukee returned an Indictment charging Nee Gee J. Cloud, a Native American Indian, with assault to commit murder, in violation of 18 U.S.C. §§ 113(a)(1) and 1153(a) (count one); burglary (with intent to commit a felony), with an enhancement for having committed a battery upon a person lawfully present in the dwelling, in violation of 18 U.S.C. § 1153(a) and Wisconsin Statute § 943.10(2)(d) (count two); and domestic assault by a habitual offender in violation of 18 U.S.C. § 117(a) (count three), all within the boundaries of the Menominee Indian Reservation. Cloud entered a plea of not guilty as to each count, and the case proceeded to trial before a jury on August 5, 2025.

At the close of the evidence on the second day of trial, the Government moved to dismiss count three based on its determination that it could not prove Cloud fit the definition of "habitual offender" under 18 U.S.C. § 117(a). The court denied the defendant's Rule 29 motion for judgment of acquittal as to the remaining counts and, following closing arguments, the case was submitted to the jury. The jury returned with verdicts of guilty as to each count and answered "yes" to the question as to count two whether Cloud had committed a battery to a person lawfully present on the premises. Dkt. No. 41. Counsel for Cloud orally renewed his Rule 29 motion for acquittal,

and the court took the renewed motion under advisement and invited the parties to submit briefing on the issues by October 15, 2025. Dkt. No. 42. The defendant filed a written Rule 29 motion for acquittal and brief in support thereof on October 15, 2025, and the Government filed its simultaneous response. The Government also filed a reply on October 23, 2025. Having considered the defendant's written motion as well as the Government's response and reply thereto, the court hereby reaffirms its order denying the defendant's motion for judgment of acquittal.

## BACKGROUND

This case arises out of the brutal beating of Olivia Wagnitz on the morning of September 20, 2024. Much of the evidence in the case was captured on video by surveillance cameras that had been installed by Joanne Cloud, the defendant's cousin and the owner of the residence in which the crime occurred. The video recordings introduced by the Government show Nee Gee Cloud kicking in the locked door to the home in which Ms. Wagnitz was hiding. Upon locating Ms. Wagnitz in a bedroom, Cloud repeatedly struck, kicked, and stomped on her head and face. At several points, Cloud walked out to the kitchen, washed the blood off his hands, and returned to the room to continue the beating. Eventually, as others were arriving, he left with Ms. Wagnitz lying unconscious in a pool of her own blood. Law enforcement later arrived at the scene, located the defendant nearby, and placed him in custody.

Ms. Wagnitz, still unconscious but breathing, was transported by helicopter to a Wausau hospital where she was placed in an intensive care unit (ICU) and ultimately placed on a ventilator due to swelling of her airway passages. She was also diagnosed with multiple facial fractures about the eyes and nose. She remained in the hospital for about two weeks. Notwithstanding the defendant's violent entry to the home and the gruesome video evidence of his beating of Ms. Wagnitz, the defendant argues that the evidence submitted was insufficient to establish the

essential elements of each of the crimes of conviction. The court will address each in turn but first will address the Government's argument that Cloud's motion is untimely.

## ANALYSIS

A.  **Timeliness**

Rule 29(c)(1) states: "A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c). The Court has held that a district court has no authority to grant a defendant's motion for judgment of acquittal filed even one day outside the time limit prescribed by Rule 29(c). *Carlisle v. United States*, 517 U.S. 416, 433 (1996). As noted above, Cloud filed his written motion for acquittal and supporting brief on October 15, 2025, more than 60 days after the verdict. The Government argues that, because this was more than fourteen days after the return of the verdict, which occurred on August 6, 2025, the court must deny Cloud's motion as untimely.

The Government omits some of the procedural history. Cloud orally moved for acquittal under Rule 29 at the close of the evidence. Counsel argued at that time that the evidence was insufficient to prove the essential element of intent to murder regarding count one. As to count two, counsel argued that the Government had failed to introduce sufficient evidence to show lack of consent to enter the premises, entry with intent to commit a felony, and that the alleged battery was without Ms. Wagnitz' consent. The court acknowledged that the sufficiency of the evidence as to both the intent to murder and lack of consent for entry was arguable but concluded that it warranted consideration by the jury and denied the motion. After the jury returned its verdict, counsel for the defendant renewed his Rule 29 motion. At that point, the court inquired as to whether or not either party wished to submit written argument. Counsel thought he would be able to submit something in writing within fourteen days, but the court entered a docket order on September 17, 2025, requesting that the parties submit any briefs on or before October 15, 2025.

3

The court noted in its text order that it had reserved ruling on the defendant's oral motion for judgment of acquittal. As requested, both parties submitted briefs on October 15, 2025, with the Government filing a reply on October 23, 2025.

Given this history, the court is satisfied that the defendant's motion or renewed motion for judgment of acquittal was timely. The motion was orally made the same day that the jury returned its verdict. While the briefing was delayed until October 15, 2025, the delay was at the request of the court so that it could review the transcript. Having renewed his motion for judgment of acquittal immediately upon the return of the jury's verdict, counsel was not required to submit a written motion with his brief. In doing so, he did not render his initial oral motion untimely. Under these circumstances, the court is satisfied that the oral motion was timely and that it has jurisdiction over the renewed motion for acquittal under Rule 29.

**B. Rule 29 Standard**

"Any challenge to the sufficiency of the evidence comes with a heavy, indeed, nearly insurmountable, burden." *United States v. Maldonado*, 893 F.3d 480, 484 (7th Cir. 2018). This follows from the fact that great deference is afforded to jury verdicts. *Id.* The test is "whether at the time of the motion there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt." *United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989). In applying this test, the evidence presented at trial is viewed in the light most favorable to the government and all reasonable inferences are drawn in its favor. *United States v. Sorenson*, 134 F.4th 493, 498 (7th Cir. 2025). *See also United States v. Anderson*, 988 F.3d 420, 424 (7th Cir. 2021) ("We will overturn a conviction only if, after reviewing the record in this light, we determine that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt."). It is with this standard in mind that the court reviews the jury verdict as to each count.

### C. Count One: Assault with Intent to Murder

In order to find the defendant guilty of count one, the jury was instructed that the Government must prove beyond a reasonable doubt that Nee Gee Cloud assaulted Olivia Wagnitz with the intent to commit murder. It is as to this element that the defense contends that the Government's evidence was insufficient. Counsel notes that there was no direct evidence or testimony that Cloud had planned to murder Ms. Wagnitz, nor was there any evidence of statements he had made regarding an intent to kill her, either before or during the assault. More importantly, counsel notes that Cloud did not kill Ms. Wagnitz, though he had ample opportunity to do so. The video recordings show that knives were available in the dish rack next to the sink where Cloud washed his hands and blunt instruments were present throughout the house. Counsel argues that if Cloud had intended to kill Ms. Wagnitz, he would have used a knife or blunt instrument and not simply strike her with his hands and feet. The fact that he did not use such a weapon and that Ms. Wagnitz survived her injuries, counsel argues, precludes a finding beyond a reasonable doubt that Cloud intended to murder Ms. Wagnitz.

That there is no direct evidence of intent is not unusual. It is not possible to read a person's mind, and even a person's words are not conclusive as to his or her intent. Intent, if it is to be found, is in most cases inferred from a person's words and actions. *See, e.g.*, *People v. Holloway*, No. 321228, 2015 WL 3797741, at *2 (Mich. Ct. App. June 18, 2015) ("From this testimony describing the violent, aggressive, and repeated nature of defendant's assaultive conduct during the attack, the jury could reasonably find, beyond a reasonable doubt, that defendant assaulted the victim with an actual intent to kill her."), *rev'd on other grounds*, 498 Mich. 947, 872 N.W.2d 478 (2015). In *Holloway*, the defendant struck the victim with a hard, heavy metal bar as she was lying in her bed, threw her on the floor, and then choked her by holding the bar against her neck with both hands, causing her to lose consciousness. When she regained consciousness, she tried to

5

leave, but he again knocked her to the floor and choked her with his hands, causing her to lose consciousness a second time. At the hospital, a laceration on the back of her head was closed with 18 staples and red marks, bruising, and cuts were noted around her neck. "From the victim's testimony detailing the violent nature of defendant's conduct during the assault, as well as the manner of the assault," the court concluded, "a rational jury could reasonably find that the natural tendency of defendant's assaultive conduct was to cause death to the victim." *Id.* at *1.

Choking a person so as to prevent her from breathing certainly gives rise to an inference of intent to kill. A person can live only so long without being able to breathe. But violently and repeatedly striking a person on and around the head can likewise give rise to such an inference since damage to the brain can also cause death. Moreover, in this case, though the jury did not hear from the victim, they were able to see the video recordings of the assault as it had actually occurred. The fact that Cloud repeatedly returned to the victim and continued to strike her about the head with his fists and feet, even after she had apparently lost consciousness, only strengthens such an inference.

The fact that Cloud did not actually kill Ms. Wagnitz does not negate an intent to do so as a matter of law or logic. To be sure, a jury would not have been unreasonable in deciding that Cloud did not have such an intent. As the defense contends, it would have been a surer way of murdering Ms. Wagnitz, if that was Cloud's intent, to use a knife or a blunt object. But the fact that the most effective means were not used does not preclude a jury's determination that the nature and brutality of the beating warranted an inference to kill. The facts that Cloud repeatedly struck Ms. Wagnitz about the head and face, and continued to do so with his fists and his feet after she had lost consciousness, are sufficient from which to infer such an intent. The jury was properly instructed on circumstantial evidence and there is no reason to believe that they did not follow those instructions.

6

The defense also argues that the extent of Cloud's intoxication precluded him from having the requisite intent for the crime. But the jurors were also instructed on the defense of voluntary intoxication and were told they could consider evidence that the defendant was incapable of acting with the required intent. Having observed the purposeful actions of the defendant in breaking into the home and inflicting such a brutal beating upon Ms. Wagnitz, it was not unreasonable for the jury to conclude that Cloud's intoxication did not preclude the requisite intent. Accordingly, the court concludes that sufficient evidence was presented as to count one.

**D. Count Two: Burglary with Intent to Commit a Felony and Battery**

Cloud also challenges the sufficiency of the evidence to support the jury's verdict on count two. As to count two, the jury was instructed that in order to find the defendant guilty they would have to find that he entered the building without the consent of the person in lawful possession. Cloud's cousin, Joanne Cloud, was the owner of the home. Ms. Cloud testified that she allowed the defendant and Ms. Wagnitz to stay at her place at the end of the summer. Though they were initially sleeping in their car and only using her bathroom, Ms. Cloud testified that as the weather cooled she allowed them to stay in her basement. Based on this evidence, Cloud argues that his entry into the home on September 20, 2024, was not without consent.

Ms. Cloud also testified, however, that Nee Gee Cloud was only allowed to enter her house when she was present. She specifically stated that he did not have permission to enter the residence after she had left, as she had that morning. The fact that he did not have a key, that the door was locked, and that Cloud had to kick in the door to gain entry is sufficient to support the jury's finding that Cloud did not have consent of the owner to enter at the time of the crime. To be sure, there was some confusion on the point as Ms. Wagnitz was also in the home. Nevertheless, since Ms. Wagnitz was already inside when Ms. Cloud left, she was arguably in the residence with Ms. Cloud's permission. Ms. Cloud testified that Nee Gee Cloud was not allowed to go into the home

7

when she was not home. She stated he was allowed to come and go as he pleased when she was home—but not when she was gone. Ms. Cloud stated that was a household rule she had explained to him prior to September 20, 2024. This evidence, though somewhat unclear, is sufficient to support the jury's finding, when considered with all of the other evidence, that Cloud's entry was without consent of the person in lawful possession.

Counsel also argues that the evidence was insufficient to prove the enhancement to the burglary charge. The enhancement required proof that, upon entry, Cloud had committed a battery upon a person who was lawfully on the premises. Cloud argues that if he was not lawfully on the premises, i.e. that he entered without consent of the owner, then neither was Ms. Wagnitz. Ms. Wagnitz, however, did not break into the premises. She was there when Ms. Cloud left and locked the door. She did not break in. Under these circumstances, a reasonable jury could conclude that Ms. Wagnitz was lawfully on the premises, even though Ms. Cloud did not realize she was still there when she left earlier in the day.

That Cloud entered with intent to commit a felony is also supported by the reasonable inferences to be drawn from the evidence. The video depicts Cloud angrily breaking down the door to gain entry and then immediately searching the home until he finds Ms. Wagnitz hiding in a bedroom. He immediately begins to brutally beat her. There is no evidence that suggests he had any intent upon entering other than to brutally beat Ms. Wagnitz. He did not go to the bathroom, change his clothes, watch television, or use or remove any property. Because assault with intent to commit serious bodily injury is a felony and there is no evidence Cloud had any intent other than to brutally beat Ms. Wagnitz upon entering the residence, the jury's finding that Cloud entered with intent to commit a felony was sufficiently supported by the evidence.

Finally, counsel argues that the evidence does not support the jury's finding that Cloud caused bodily harm to Ms. Wagnitz without her consent as the crime of battery requires. Because

8

Ms. Wagnitz did not testify, counsel contends that the evidence does not support the finding that Cloud committed a battery upon a person lawfully on the premises. Here, again, the evidence is more than sufficient to support the inference that Ms. Wagnitz did not consent to the beating Cloud inflicted upon her. Her fear of Cloud is clear on the video has she refuses to allow him to enter and proceeds to hide, first in a closet and then in a bedroom, as he is kicking open the door. The brutal beating Cloud inflicted is not something any sane person would consent to suffer.

## CONCLUSION

In sum, through counsel, Cloud reasonably argued to the jury that the evidence presented by the Government was insufficient to prove he committed either count one or count two. A reasonable jury could have returned not guilty verdicts as to either or both counts. Counsel repeats his arguments in support of his motion for judgment of acquittal to the court. The question before the court, however, is not whether the court finds the evidence sufficient. The question is whether any reasonable jury could so find. For the reasons set forth above, the court concludes that a reasonable jury could reach such verdicts. Cloud's renewed Rule 29 motion for judgment of acquittal is therefore denied.

**SO ORDERED** at Green Bay, Wisconsin this <u>28th</u> day of October, 2025.

_____
William C. Griesbach
United States District Judge